

O'Melveny & Myers LLP  T: +1 212-326-2000
1301 Avenue of the Americas  F: +1 212-326-2061
Suite 1700  omm.com
New York, NY 10019-6022

June 10, 2024

**Mark W. Robertson**
D: +1 212-326-4329
mrobertson@omm.com

<u>**VIA ECF**</u>

Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>*Chisolm-Lucas v. American Airlines, Inc.*, No. 1:23-cv-05177-BMC (E.D.N.Y.)</u>

Dear Judge Cogan:

Defendant American Airlines requests a pre-motion conference on its planned summary judgment motion. Plaintiff is an American flight attendant. As such, his employment is governed by a collective bargaining agreement ("CBA") negotiated by his union. Under the CBA, flight attendants are guaranteed from 71 to 75 hours of pay each month, depending on their schedule. Because trips are often distributed unevenly throughout the month, and because flight attendants have the ability to change their trips up to two hours prior to report time, the CBA establishes a pay system that smooths out monthly pay and adds predictability. Specifically, flight attendants receive two "semi-monthly" paychecks—on the 15th and the 30th of each month. On the 30th, flight attendants receive a paycheck (referred to as an advance) for 37.5 hours—half the highest guaranteed monthly wages under the CBA. Then, on the 15th of the next month, they receive a paycheck for all wages owed for the prior month, less the previously-paid advance.[1]

In Count I, Plaintiff claims the wage statements he received with his paycheck on the 30th violate New York Labor Law Section 195(3) because they do not contain hours worked or rates of pay for those hours. *See* Dkt. 23 ("SAC") ¶ 51. In Count II, he claims the CBA's pay system violates Section 191(1)(d) because (i) he was not paid "for work performed within the pay period within seven days of the end of [his] pay periods," and (ii) his paycheck on the 30th did not include all wages based on his hours worked "[d]uring the first half of the month." *See* SAC ¶¶ 34, 56.

**I.  <u>American Is Entitled To Summary Judgment On Count I.</u>**

The Court should dismiss Plaintiff's wage statement claim for the same reasons it has dismissed several others: Plaintiff lacks standing. *See Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *1-2 (E.D.N.Y. April 25, 2023); *Melgar v. Pie Chatach 1776 LLC*, 2023 WL 2868299, at *1-2 (E.D.N.Y.

---

[1] Before July 16, 2018, New York-based flight attendants were paid differently, but Plaintiff testified in his deposition that he is not challenging that former pay system.



April 20, 2023); *Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 266-67 (E.D.N.Y. 2022).

Plaintiff asserts three injuries, but none is sufficient to ground standing. First, Plaintiff claims his mere allegation of a statutory violation constitutes an injury-in-fact. *See* SAC ¶¶ 8, 30. But *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), "clarified that Article III standing does not exist simply because" of a "technical" statutory violation, even if the "violation triggers a statutory damage award." *Deng*, 640 F. Supp. 3d at 265.

Second, Plaintiff claims he suffered an informational injury—that the allegedly non-compliant wage statements prevented him from determining whether he is properly paid. *See, e.g.*, SAC ¶ 36. But an informational injury alone also cannot create standing. *See TransUnion*, 594 U.S. at 441-42; *see also Harty v. W. Point Realty, Inc*., 28 F.4th 435, 444 (2d Cir. 2022). Plaintiff must also identify "downstream consequences from failing to receive the required information." *Harty*, 28 F.4th at 444 (quotations omitted). And any such link between a deficient wage statement and a downstream concrete injury requires "more than speculation and conjecture." *Melgar*, 2023 WL 2868299, at *2; *see also Quieju*, 2023 WL 3073518, at *2. Plaintiff identifies no downstream consequence at all. More importantly, Plaintiff testified he suffered no informational injury in the first place—he testified he received information sufficient to ascertain any underpayment.

Finally, Plaintiff claims the CBA's pay structure resulted in him being paid his wages late in violation of Section 191. *See* SAC ¶ 35. That injury, if it exists, was not caused by deficient wage statements. Consequently, it cannot ground standing for a claim under Section 195. *See Quieju*, 2023 WL 3073518, at *2; *see also Melgar*, 2023 WL 286299, at *2.

## II.     American Is Entitled To Summary Judgment On Count II.

American is entitled to summary judgment on Plaintiff's Count II because there is no private right of action for Section 191 claims, or alternatively, because American has complied with the statute.

No Private Right of Action. The New York Appellate Departments are split on whether there is a private right of action to bring Section 191 claims. *Compare Grant v. Glob. Aircraft Dispatch, Inc*., 223 A.D.3d 712, 715 (2d Dep't 2024) (no private right of action) *with Vega v. CM & Assocs. Constr. Mgmt., LLC,* 175 A.D.3d 1144, 1144 (1st Dep't 2019) (private right action). Before *Grant* held there is no private right of action, this Court expressed doubts about *Vega* but followed it "pending further instruction from the New York State courts." *Georgiou v. Harmon Stores, Inc.*, 2023 WL 112805, at *5-6 (E.D.N.Y. Jan. 5, 2023). *Grant* provides that instruction, holding Section 191 is not privately enforceable. *See Grant*, 223 A.D.3d at 716, 720. This Court should follow *Grant*.

American Complies With Section 191(1)(d). Section 191 governs the frequency of wage payments. It divides covered workers into four categories: (i) manual workers, (ii) railroad workers, (iii) commission salespersons, and (iv) clerical/other workers. *See* N.Y. Lab. Law § 191(1)(a)-(d). Plaintiff is an "other worker." SAC ¶ 55. He thus must be paid "wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. Lab. Law § 191(1)(d). American complied with each requirement. American paid Plaintiff the wages he earned in accordance with the CBA. American paid Plaintiff semi-monthly—i.e., twice a month. And American paid Plaintiff



on regular paydays, designated in advance by the CBA—the 15th and the 30th.

Plaintiff, however, asks this Court to impose imaginary conditions that do not exist in Section 191(1)(d).  He first claims American violated the statute because it did not pay him "within seven days of the pay period."  SAC ¶ 55.  But Section 191(1)(d) does not require employers to use pay periods, much less to pay "other workers" within seven days of those pay periods.  It is only "manual workers" who must be paid "not later than seven calendar days after the end of the week in which the wages are earned."  N.Y. Lab. Law § 191(1)(a).  And railroad workers must be paid on Thursday "the wages earned during the seven-day period ending on Tuesday of the preceding week."  *Id*. § 191(1)(b).  There is no comparable requirement for "other workers" like Plaintiff.

Plaintiff's alternative theory suffers from a similar fatal flaw.  He claims that paychecks following the end of a pay period must include pay "for all hours of work actually performed in [that] pay period."  *See* SAC ¶¶ 34, 57.  To make his theory work, Plaintiff first artificially divides his monthly schedule into two pay periods—one covering the first half of the month that ends with his 15th of the month paycheck and the other covering the second half of the month that ends with his 30th of the month paycheck.  *See id*. ¶ 3.  Plaintiff then claims his 30th of the month paycheck violated Section 191(1)(d) when he worked more than the 37.5 in the first pay period, because the paycheck on the 30th reflected wages for only 37.5 hours.  *See* SAC ¶ 56.

This theory fails for two reasons.  One is that Section 191(1)(d) contains no pay period requirement at all, nor does it dictate when wages must be paid after they are "earned."  In this regard, Section 191(1)(d) stands in stark contrast with the other provisions in Section 191(1).  The Legislature only required employers to pay manual workers, railroad workers, and commissioned salespersons within a specific amount of time after the pay period in which "the wages are earned."  *Id*. § 191(1)(a); *see id*. §§ 191(1)(b)-(c).  If the Legislature wanted to impose such a requirement for "other workers," it knew how to do so.  But it did not.  *See Rivers v. Birnbaum*, 102 A.D.3d 26, 36 (2d Dep't 2012) ("[W]here the Legislature 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the Legislature] acts intentionally and purposefully in the disparate inclusion or exclusion.'").

But even if subsection (d) required American to pay Plaintiff following the end of the pay period in which his wages were "earned," American did so.  Plaintiff assumes that wages are "earned" immediately on each day a flight attendant performs work.  SAC ¶ 34.  But the statute does not say that.  It expressly states that workers must "be paid the wages earned in accordance with the agreed terms of employment."  And "[i]t is beyond dispute that the phrase 'in accordance with the agreed terms of employment' means that the parties to an employment agreement may define for themselves the circumstances under which wages are 'earned.'"  *Giugliano v. FS2 Cap. Partners, LLC*, 2015 WL 5124796, at *15 (E.D.N.Y. Sept. 1, 2015) (citing *Pachter v. Bernard Hodes Grp., Inc*., 10 N.Y.3d 609 (2008)).  Under the CBA, flight attendants "earn" their wages once the month is complete and are paid those wages during their next semi-monthly paycheck on the 15th of the subsequent month.  Accordingly, even if the statute required employers to pay all wages in the subsequent paycheck after the pay period in which they were earned, American did so.  *Id*.

Respectfully submitted,



/s/ *Mark W. Robertson*

Mark W. Robertson

4