# Law Office of Roosevelt N. Nesmith, LLC

400 Broadacres Drive, Suite 260
Bloomfield, New Jersey 07003
roosevelt@nesmithlaw.com

(T)(973) 259-6990  (F) (866) 848-1368
*Admitted in NJ & NY*

June 14, 2024

<u>VIA ECF</u>
Hon. Brian M Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11202

Re: **<u>Chisolm Lucas v. American Airlines, Inc.  Docket No. 1:23-CV-05177 (E.D.N.Y.)</u>**

Dear Judge Cogan:

This firm, along with co-counsel represents Plaintiff Barron Chisolm-Lucas and members of the putative class in the above-referenced matter. Plaintiff submits this letter in response to the American Airlines' premotion conference letter outlining its arguments in support of a motion for summary judgment on Plaintiff's claims under NYLL §195(3) and §191(1). American fails to set forth grounds sufficient to meet its burden on a motion for summary judgment.

**<u>Factual Background</u>**: Plaintiff and the American Airlines' New York based Flight Attendants are all hourly paid employees. As per the New York Department of Labor, "Section 191 of the Labor Law requires the timely payment (*i.e*.., semi-monthly) in full for all hours worked at an employee's agreed-upon rate of pay." Partial payment for some hours worked in the pay period does not satisfy an employer's obligation under §191. *See* [frequency-of-pay-frequently-asked-questions.pdf (ny.gov)](frequency-of-pay-frequently-asked-questions.pdf). While American has paid Plaintiff and the other New York based Flight Attendants semi-monthly, it fails to pay them for all hours worked in every alternating pay period. Instead, American uses an "advance and true-up" system with one payment comprised of an "advance," currently capped at 37.5 hours at the Flight Attendants' regular rate of pay, regardless of the actual number of hours actually worked during that two week period The wage statement reflecting the advance fails to provide the number of hours worked and applicable rates of pay. *See* SAC, Ex. B. The second payment consists of a "true up," comprised of a payment for the balance of hours worked for the previous month over the advance at the applicable (as opposed to "regular") rates of pay for specific categories of work, which is remitted two weeks later on the 15th of the following month. *See* SAC, Ex. A. The pay statement accompanying the "true up" is the only statement that identifies all actual hours worked and rates of pay for the prior month.

As a result of American Airline's "advance" and "true up" payment system, Plaintiff and the other Class members are paid for their actual hours worked at the applicable rates of pay only once per month and are underpaid their earned wages during any "advance" pay period in which their actual hours worked were greater than the "advance." SAC ¶ 35. Two of American's corporate witnesses

testified that other Flight Attendants often work more hours than they are paid for during an "advance" pay period, sometimes pushing upward of 200 hours per month.  American does not pay interest on the underpaid and delayed hourly wages.

**Plaintiff's NYLL 195(3) Claim—Count 1:**  American argues that Plaintiff's NYLL §195(3) must fail because he cannot plausibly demonstrate having suffered an injury-in-fact sufficient to meet constitutional standing requirements under *TransUnion LLC. v. Ramirez*, 594 U.S.413 (2021). Contrary to American's assertion, Plaintiff identifies specific downstream injuries causally related to American's failure to provide the information required by NYLL §195(3).  *See* SAC ¶¶ 35-38.

 Plaintiff's and other Flight Attendants' work hours vary widely during the course of a month and include numerous hourly pay enhancements.  SAC ¶ 35.  However, for "advance" pay periods, the wage statements are devoid of any information on the actual hours worked or the applicable rates of pay.  *See* SAC, Ex. B.  In every alternating "advance" pay period, Plaintiff cannot ascertain whether American has correctly credited him with the myriad forms of compensation due to him for his work during that pay period. SAC ¶36.  The omission is not cured by the "true up" wage statement transmitted the following month.  The "true up" does not identify when wages were earned during the prior month.  Rather, all actual hours worked and pay enhancements are summed for the entire month.  Thus, Plaintiff cannot identify the actual hours worked at applicable rates of pay during any given week from the prior month.  *Id*.

The denial of the information on the wage statements has real world consequences. American acknowledges that the complexity of its pay system creates errors in calculating payroll.  It places the responsibility on Plaintiff and other Flight Attendants' to identify those errors by referring to other reports reflecting their flight activity and bring them to its attention.  The CBA includes a section entitled "Pay Discrepancies"  which details the timing and process by which Flight Attendants are compensated when the discrepancy is less than 2 hours (included in next check), 2-5 hours (check by regular mail within 5 days of determination) or more than 5 hours (check by overnight mail). American's Manager of Flight Payroll testified that American's payroll discrepancy claim system requires Flight Attendants to submit payroll disputes to the company. The claims are reviewed by the Crew Compensation Department, and if the claimed error is validated, it is forwarded to payroll for late payment pursuant to the CBA.  Thus, if Plaintiff is able to identify a payroll error, and the error occurred in the "advance" pay period, *i.e*., the first two weeks of the month, Plaintiff is denied the opportunity to identify and correct the payroll until nearly six weeks after occurrence, and at least two weeks later than if American provided the information required by §195(3) information.  While American argues it is compelled to make only the "advance" payment by the terms of the CBA, the CBA does not speak to the information American is required to include in the wage statement, only capped number of hours that will be paid in the advance.  American's Flight Payroll Manager also testified that American has available to it all the information necessary to include actual hours data in the "advance" pay statement but fails to do so.  This further shows that there is no reason American cannot use its software to pay all wages earned and worked in every pay period.  Evidence in discovery has shown that other airlines, such as Delta, do so, and so comply with the law.

American misses the mark in its reliance on the Court's decisions in *Quieju v. La Jugueria Inc*., 2023 WL 3073528 (E.D.N.Y. April 15, 2023), *Melgar v. Pie Chatach* 1776 LLC, 2023 WL 2868299 (E.D.N.Y April 20, 2023) and *Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255

(E.D.N.Y. 2022). The American Flight Attendant "advance" pay system has nothing in common with a restaurant payroll applicable to workers with standard hourly schedules and unwavering hourly rates of pay. Moreover, Plaintiff has articulated his real world injuries caused by American's failure to provide legally compliant wage statements—the actual inability to determine if he was compensated correctly, in a timely fashion or at all. He has set forth (1) that he suffered injury or the threat of injury in his inability to ascertain from his wage statement whether he was correctly compensated; (2) that the injury was caused by American's failure to provide the wage statement information required by §195(3) and (3) the injury is likely to be redressed by the requested relief—an order compelling American to provide the statutorily required information. *See Lipstein v. 20X Hosp. LLC,* 2023 WL 6124048 **26-7 (S.D.N.Y Sept. 19, 2023).

**Count II - Plaintiff's Private Right of Action under §191**. American argues there is no private right of action under NYLL §191 pursuant to the New York Second Department holding in *Grant v. Glob Aircraft Dispatch, Inc.*, 223 A.D. 3d 712 (2nd Dept. 2024). However, the *Grant* decision conflicts with the First Department decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC,* 175 A.D.3d 1144 (1st Dept. 2019), which held there is a private right of action for violations of § 191, which is the case holding almost uniformly followed even after the *Grant* decision. American rehashes the same argument the Court rejected when American sought a stay of these proceedings. *See* ECF, Order dated April 24, 2024, re ECF 26.

**Count II - American Violates NYLL §191(1)(d)**. The American "advance" pay system violates the express requirements of NYLL §191(1)(d), which requires employers to pay Plaintiff and New York Flight Attendants "the wages earned . . .not less frequently than semimonthly." American ignores the plain language of the statute to argue "191(1)(d) contains no pay period requirement". Am. Ltr. at 3. American's arguments to avoid §191's requirements fail to place American beyond the statute. First, it is American that divides the Plaintiff's monthly compensation into two pay periods. *See* SAC, Ex., B (Pay Period: 12/02/22 – 12/16/22) Thus, it is American that defines the semi-monthly pay period—consistent with the plain meaning of "semi-monthly" in the statute. Second, American broadly argues that "[u]nder the CBA, flight attendants "earn" their wages once the month is complete and are paid those wages during the next semi-monthly paycheck on the 15th of the subsequent month." Am. Ltr at 3. American's construction of "earned" finds no support in the CBA, which includes a section entitled "Monthly Method of Pay" which states that "[a] Flight Attendants' pay on the thirtieth (30th) of the month . . . . *The balance of pay due will be paid on the fifteenth (15th) of the following month.)"*(emphasis added). Thus, the CBA acknowledges that compensation earned during advance period (*i.e.*, the balance) will be paid later than the paycheck for the semi-monthly period in which it was earned. American's failure to pay all wages earned in the paycheck for the semi-monthly period in which it was earned is an actual underpayment on the required pay date in violation of §191(1)(d). American's payroll practices enable it to "float" all wages worked and earned above the 37.5 hour "advance" until the end of the following pay period-- up to 23 days after the wages are earned. American is able to use this pay deficiency for its 6,300 New York-based flight attendants occurring over six years to invest or for its operations. It was not the intention of either sections 191 or 195 to allow employers to pay less than all wages worked and earned in a pay period and defer wages "owed" (the term "owed" is American's) until later pay periods. "Money later is not the same as money now." *Georgiou v. Harmon Stores, Inc*, 2023 WL 112805, *3 (E.D.N.Y. Dec. 29, 2022)(BMC)(quoting *Stephens v. U.S. Airways Grp*., 644 F.3d 437, 4442 (D.C. Cir. 2011)(Kavanaugh, J. )

3

                Respectfully submitted,

                By: *s/Roosevelt N. Nesmith*
                    Roosevelt N. Nesmith

cc: All Counsel of Record (*Via ECF*)