UNITED STATES DISTRICT COURT
EASTERN DISRICT OF NEW YORK

----------------------------------------------------------------x

BARRON CHISOLM-LUCAS, individually and on
behalf of all others similarly situated,                          Case No.:  1:23-cv-05177 (BMC)

        Plaintiff,

    v.

AMERICAN AIRLINES, INC.

        Defendant.

----------------------------------------------------------------x


**PLAINTIFF BARRON CHISOLM-LUCAS'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT AMERICAN AIRLINES, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................. ii

I. Statement of Facts ......................................................................................1

    A. American's Current "Advance and True Up" Payment System.......................1

    B. American's "Advance and True Up" Pay System Prior To July 2018 .............2

    C. American Does Not Pay Interest On The Late Wage Payments ......................3

    D. American's Designated Corporate Witnesses Do Not Know The Origins
    or Rationale of the "Advance and True Up" Payment System ............................4

    E. Plaintiff and Other Flight Attendants Work More Hours Than Covered By
    The Advance ..................................................................................................5

    F. Half of American's Wage Statements Fail To Include The Flight
    Attendant's Actual Number of Hours Worked and Applicable Rates of Pay.........6

II. Argument ...................................................................................................7

    A. American Has Violated Section 191(1)(d) By Failing To Pay Plaintiff and
    Other Flight Attendants Their Earned Wages in Full Semi-Monthly ..................7

        1. Hourly Wages Are Earned When The Work Is Performed ..................7

        2. There Is A Private Right of Action to Enforce Section 191(1) ..........12

        3. Resolving Plaintiff's Section 191 Claim Does Not Require
        Interpretation of the CBA; Hence There is No Preemption Under the
        RLA or LMRA.....................................................................................15

    B. Plaintiff Has Suffered Injury and Danger of Future Injury from
    American's Violation of Section 195©Sufficient for Article III Standing ..........20

III. Conclusion ..............................................................................................26

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Alaska Airlines, Inc. v. Schurke*,
   898 F.3d 904, 914 (9th Circuit) ................................................................. 16

*Arguello v. Lojan,*
   2023 U.S. Dist. LEXIS 120141 (E.D.N.Y. July 12, 2023) ............................. 24

*Arroyo v. NYU Langone Hosp.,*
   2019 U.S. Dist. LEXIS 189531 (S.D.N.Y. Oct. 31, 2019) ............................. 18

*Balcorta v. Twentieth Century-Fox Film Corp.*,
   208 F.3d 1102 (9th Cir. 2000) .................................................................... 16

*Bazinett v. Pregis LLC*,
   2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024) ............................................. 14

*Beh v. Cmty. Care Companions Inc*.,
   2024 WL 264448 (W.D.N.Y. Jan. 24, 2024) ............................................... 13

*Berger v. New York Univ*.,
   2019 U.S. Dist. LEXIS 129691, 2019 WL 3526533 (S.D.N.Y. Aug. 2, 2019) .............. 17, 19

*Bueno v. Buzinover*,
   2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113 (S.D.N.Y. March 7, 2023) ............. 21, 24

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) .......................................................................... 25

*Chen v. Dunkin' Brands, Inc*.,
   954 F.3d 492 (2d Cir. 2020) ....................................................................... 13

*Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*,
   194 F. Supp. 3d 221 (S.D.N.Y. 2016) ......................................................... 18

*Colo. Anti-Discrimination Comm'n v. Cont'l Air Lines, Inc.*,
   372 U.S. 714 (1963) .................................................................................... 16

*Diaz v. Amedeo Hotels Ltd. P'ship*,
  2016 U.S. Dist. LEXIS 41453, (E.D.N.Y. March 29, 2016) ...............................................20

*Fund for Animals v. Babbitt*,
  89 F.3d 128 (2d Cir. 1996)...............................................................................................20

*Galante v. Watermark Servs. IV LLC*,
  2024 WL 989704 ...............................................................................................................13

*Gamboa v. Regeneron Pharms., Inc.*,
  2024 WL 815253 (S.D.N.Y. Feb. 27, 2024) ...................................................... 13, 14, 15

*Garcia v. Skechers USA Retail, LLC*,
  2024 WL 1142316, (E.D.N.Y. Mar. 15, 2024) ....................................................... 14, 15

*Georgiou v. Harmon Stores, Inc.*,
  2022 U.S. Dist. LEXIS 234643 (E.D.N.Y. Dec. 29, 2022) ........................................ 12, 15

*Giugliano v. FS2 Capital Partners, LLC*,
  2015 U.S. Dist. Lexis 118679 (E.D.N.Y. Sept. 1, 2015) ..................................................11

*Grant v. Glob. Aircraft Dispatch, Inc.*,
  223 A.D.3d 712, 204 N.Y.S.3d 117 (N.Y. App. Div. 2024)............................12, 13, 14, 15

*Gutierrez v. Carter's Inc.*,
  2023 WL 7337184, (E.D.N.Y. Nov. 7, 2023) ..............................................................13

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246 (1994) .......................................................................................................16

*Hicks v. T.L. Cannon Mgmt. Corp.*,
  2018 WL 2440735 (W.D.N.Y. Mar. 13, 2018) ...............................................................21

*Imbarrato v. Banta Mgmt. Servs.*,
  2020 U.S. Dist. LEXIS 49740 (S.D.N.Y. Mar. 20, 2020).................................................21

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ....................................................................................25

*Isaacs v. Cent. Parking Sys. of N.Y., Inc.*,

2012 WL 957494 (E.D.N.Y. Feb. 27, 2012) ..................................................................19

*Kaye v. Orange Reg'l Med. Ctr.*,
   975 F. Supp. 2d 412 (S.D.N.Y. 2013) .......................................................................18

*Konkur v. Utica Academy of Science Charter School*,
   185 N.E. 3d 483 (2022) ............................................................................................15

*La Juett v. Coty Mach. Co.*,
   153 Misc. 410 (N.Y. County Ct. Nov. 3, 1934) .........................................................11

*Levy et al. v. Endeavor Air Inc.*,
   2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024) ...........................................................13

*Lingle v. Norge Div. of Magic Chef, Inc.*,
   486 U.S. 399, 108 S. Ct. 1877 (1988) .......................................................................17

*Lipstein v. 20X Hosp. LLC*,
   2023 U.S. Dist. LEXIS 167615 (S.D.N.Y. Sept. 19, 2023)........................................24

*Livadas v. Bradshaw*,
   512 U.S. 107 (1994) ...........................................................................................16, 17

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ...................................................................................................20

*Lubinski v. Johnson Controls, Inc.*,
   2024 U.S. Dist. LEXIS 119705 (S.D.N.Y. July 9, 2024)...........................................24

*Martinez v. Finger Mgmt. Corp.*,
   2024 U.S. Dist. LEXIS 85146 (S.D.N.Y. May 10, 2024) ..........................................24

*McLean v. Garage Mgmt. Corp.*,
   2011 U.S. Dist. LEXIS 32760, 2011 WL 1143003 (S.D.N.Y. March 29, 2011)...................18

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010). ......................................................................................9

*Polanco v. Brookdale Hosp. Med. Ctr.*,
   819 F. Supp. 2d 129 (E.D.N.Y. 2011)..........................................................12, 18, 19

*Quieju v. La Jugueeria* Inc.,
2023 U.S. Dist. LEXIS 72050 ................................................................. 20

*Reed  v. IC Sys.*,
15-CV-279 (KRG), 2017 U.S. Dist. LEXIS 3239, 2017 WL 89047 (W.D. Pa. Jan. 10, 2017) 25

*Sarmiento v. Flagge Cont. Inc.*,
2024 WL 806137 (S.D.N.Y. Feb. 27, 2024) ................................................. 14

*Seidenberg v. Duboff & Davies, Inc.*,
143 Misc. 167 (N.Y. City Ct. Mar. 17, 1932) ........................................... 10, 11

*Severin v. Project OHR, Inc.*,
2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) ............................................ 17, 18

*Shugars v. Masonite Corp.*,
2023 WL 7280902 (N.D.N.Y. Nov. 3, 2023) ................................................. 13

*Stephens v. U.S. Airways Grp., Inc.*,
644 F.3d 437 (D.C. Cir. 2011) ................................................................ 13

*Strom v. Prince*,
154 Misc. 888 (N.Y. Mun. Ct. Mar. 29, 1935) .............................................. 11

*Stromberg v. Ocwen Loan Serv'g, LLC*,
2017 WL 2686540 (N.D. Cal. June 22, 2017) ............................................... 25

*Tavor v. Troia*,
2024 U.S. Dist. LEXIS 17147 (E.D.N.Y. Jan. 31, 2024) ................................. 21

*Terminal R. Asso. v. Brotherhood of R. Trainmen*,
318 U.S. 1, 63 S. Ct. 420 (1943) ............................................................. 16

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 ...................................................................................... 21

*Vega v. C&M Assoc. Const. Mgt., LLC*,
175 A.D. 3d 1144, 107 N.Y.S. 3d 286 (First Dept. 2019) ................................ 12, 13, 14, 15

*Veloz v. MM Custom House, Inc.*,
2024 U.S. Dist. LEXIS 54202 (E.D.N.Y. March 26, 2024) .......................... 21, 25

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003) ................................................................... 16, 17

*Zachary v. BG Retail, LLC*,
    2024 WL 554174 (S.D.N.Y. Feb. 12, 2024) ...................................... 13, 14, 15

## I.    Statement of Facts

Plaintiff, Barron Chisolm-Lucas ("Plaintiff"), is a Flight Attendant for American Airlines. From April 2016 to May 2019 and from October 2022 to April 2023, Plaintiff was based out of the American hub at LaGuardia Airport in Queens, New York.  Barron Chisolm-Lucas Deposition Transcript at 62: 4-19, attached as Exhibit A to the Declaration of Catherine E. Anderson ("Anderson Decl."), submitted herewith.  As a Flight Attendant for American, Plaintiff is an hourly paid employee.  *See* American Airlines Flight Attendant Agreement at AA CHISOLM-LUCAS_000043 ("Flight Attendant shall be paid hourly rates as follows" and listing hourly rates based on effective date and years of service.), attached as Exhibit B to the Anderson Decl.  During the relevant statutory period, there have been approximately 6,600 American Flight Attendants based in New York.  *See* Cindi Simone Deposition Transcript ("Simone Dep. Tr.") at 16: 13-24, attached as Exhibit C to the Anderson Decl.   In violation of the New York Labor Law § 191(1)(d), American has not paid Plaintiff and the other New York Flight Attendants their earned hourly wages in full semi-monthly.  Moreover, in violation of the New York Labor Law §195(c), every alternate wage statement fails to reflect the hours Plaintiff and the other New York based Flight Attendants worked during that pay period and the applicable rates of pay.

### A.    American's Current "Advance and True Up" Payment System

In every alternating semi-monthly pay period since July 2018, American has failed to pay Plaintiff and other New York based Flight Attendants for all hours worked, and all wages earned, during the first half of the month at the applicable hourly rates of pay.  Instead, in each of these alternating pay periods, which are paid on the 30th of each month, American has paid Plaintiff and the other New York based Flight Attendants an "advance" capped at 37.5 hours at their regular or "base" rate of pay, regardless of the actual number of hours worked by the Flight Attendants during

the first two weeks of the month.  *See* Simone Dep. Tr. at 29: 18-22; 30:6-10, Anderson Decl., Ex. B. The 37.5 hour advance payment does not reflect the actual wages earned by Plaintiff and the other Flight Attendants during that period.  As Cindi Simone, American's Managing Director of Labor Relations supporting the in-flight crew explained, the advance pay "doesn't necessarily mean that everyone earns 37 and a half hours, but that is the amount that they are given."  *Id*., at 30: 6-10.

In the following pay period, on the 15th of the next month, American pays its Flight Attendants a "true up", which includes an amount for all hours worked in the prior month in excess of the 37.5 hour advance and includes payment at the applicable (as opposed to regular or base) pay rates.  Ms. Simone testified that payment to the Flight Attendants "is the balance of everything that is owed from the previous month. . . We look to see how much did they work in that month . . . as well as any per diem which is their meal expense money or any miscellaneous claims." Simone Dep. Tr. at 31: 12-22, Anderson Decl., Ex. C.  The "true up" includes payment for all types of additional pay that the Flight Attendant may have earned in the current pay period and in the prior pay period (less the "advance"), including, but not limited to, payment for Time Away from Base, per diem and premiums, as well as payment for all "the hours earned" in the prior month. *Id*., at 52: 22-25: 53: 2-9.   Thus, on the 15th of the month, American pays its Flight Attendants "the difference of what they actually worked or earned [during the prior month] . . . minus the advance." *Id*., at 56:4-6.   As a result of American's advance and true up payment system, Plaintiff and the other Flight Attendants are paid their earned, hourly wages in full only once per month, at best.

**B.  American's "Advance and True Up" Pay System Prior To July 2018**

Prior to July 2018, American used a somewhat different "advance" and "true-up" system and paid Plaintiff and its other New York Flight Attendants a semi-monthly advance of 35 hours

at the regular rate of pay for each pay period.  On the 30th of the following month, American paid a "true up" for the hours worked and wages earned during the prior month in excess of the advances at the applicable (as opposed to regular or base) rate of pay.[1]  As Ms. Simone explained, under this prior system, "on July 15th you would get 35 . . . hours and then on July 30th you would get 35 hours as well as anything that was owed in addition for the *previous* month of June."  Simone Dep. Tr. at 32: 12-21, Anderson Decl., Ex. B.  [Emphasis added.] For Flight Attendants like Plaintiff who worked more than 35 hours in a two week pay period, this resulted in an underpayment or partial payment of their earned hourly wages in every pay period.  For example, under this prior system, money owed for hours worked by Flight Attendants in the month of June would not be paid in full until the end of July.

C. **American Does Not Pay Interest On The Late Wage Payments**

At all times relevant, when American finally pays its Flight Attendants the "true up" of what they are owed for the hours "actually worked or earned" during the prior month, American does not pay its Flight Attendants interest on the withheld earned wages.   *See* Lindsay Watkins Deposition Transcript ("Watkins Dep. Tr."), attached as Exhibit D to the Anderson Decl., at 72: 20-25; 73:1-5 ("Q. . . . when a flight attendant worked more hours during the advance pay period than were actually paid, did American compensate them with any interest on delay[] in payments for the compensation? . . . A. No.").

---

[1] See  AA CHISOLM-LUCAS_000043, Anderson Decl., Ex. B, for the Flight Attendants' base hourly rate of pay and compare with AA CHISOLM-LUCAS __000043-49, Anderson Decl., Ex. B., for the additional rates of pay which may be applied for certain categories of work.

D. **American's Designated Corporate Witnesses Do Not Know The Origins or Rationale of the "Advance and True Up" Payment System**

The origins of the "advance and true up" payment system are unknown to American's designated corporate witnesses. *See* Simone Dep. Tr. at 35: 19-23; 36: 13-20 ("was there ever in discussion or topic as to where the system originally came from. . . did you ever found out? A. No. . . . . Q: "[D]id anyone ever mention the history of the American [payment] system? . . . . A. I don't know that. I know that just in talking with colleagues it has been in place for a very long time."), Anderson Decl., Ex. C; *see also*, Vincent Heyer Deposition Transcript ("Heyer Dep. Tr."), attached as Exhibit E to the Anderson Decl., at 20:19-22 ("Q: Do you know the history of where American's advance and true-up system . . . came from? . . . A. I don't know."). The rationale underlying the advance and true up payment system is also a mystery. *See* Watkins Dep. Tr. at 73: 10-16 ("Q. Prior to July 2018, are you aware of any reason why American Airline did not pay the flight attendant for all operational hours they worked at the applicable r[ates] of pay for both pay periods during the month? A. No."), Anderson Decl., Ex. D.

American's lawyers argue, without any factual support from the record, that the advance and true up payment system was designed to smooth out payments when flights are canceled and the Flight Attendants may not work the 35 or 37.5 hours in a two week period. *See* Def. Br. at 1.

Plaintiff argues, to the contrary, that the "advance" system is simply a way for American to save money on the part of the wages it floats each month. American has the ability to pay its Flight Attendants for all hours worked in each pay period. Indeed, American's Flight Operating System ("FOS") captures all operational hours worked by the Flight Attendants in real time and it is data from the FOS that is loaded into American's payroll system to calculate the FA's compensation. Plaintiff's argument is supported by record evidence. *See* Watkins Dep. Tr. at 24-25; 32: 24-25; 33:1-4 ("Are you aware of any other source, beyond the FOS system, that would

4

contain hours-worked data for flight attendants? A. No, I do not."); 103-104; Anderson Decl., Ex. E; Holly Clark Deposition Transcript ("Clark Dep. Tr."), attached as Exhibit F to the Anderson Decl., at 80: 8-19; ("Do you know where payroll obtains information on the hours worked by flight attendants? . . . They receive it from . . . FOS."; 95:16-25 ("Q. . . . when a [flight] sequence is complete, how soon thereafter does the information from that sequence get inputted into FOS? A. . . . it's pretty much programmed to do when it's completed. It updates automatically for the things within the [flight] sequence for the calculation."). American thus can calculate, and make payment for, all hours worked and earned by the Flight Attendants twice a month for each pay period as required by law.

### E.  Plaintiff and Other Flight Attendants Work More Hours Than Covered By the Advance

While based in New York, Plaintiff worked more than 37.5 hours in the first half of the month after July 2018, and more than 35 hours in the two week pay periods prior to this time. See Expert Report of David Breshears, CPA/CFF dated July 29, 2024, ("Breshears Report"), attached as Exhibit G to the Anderson Decl. Indeed, reserve Flight Attendants can work 90 hours or more per month, line holder Flight Attendants can work 110 hours or more per month,[2] see Simone Dep. Tr. at 37:24-25; 38: 2-8, Andeson Decl., Ex. C, and some "flight attendants . . . fly 175 hours a month." Heyer Dep. Tr. at 25:7-9, Anderson Decl., Ex. E. American does not cap the number of hours that a Flight Attendant can work per month. *Id.*, at 28: 18-19 ("There is not a true max that they can fly."). Vincent Heyer, the American Senior Manager for Labor Relations, testified that

---

[2] A line holder is a flight attendant who is able to request and receive scheduled flights in advance, *see* Chisolm-Lucas Dep. Tr. at 75, Anderson Decl., Ex. A, and a reserve is a flight attendant who waits to be assigned flights by American when another flight attendant is unavailable. *Id.*, at 75-76.

Flight Attendants "have the ability to pick up as much flying as they would like to fly . . . I have seen flight attendants push upwards of two hundred hours in a month." *Id.*, at 30: 9-17.

   F.   **Half of American's Wage Statements Fail To Include The Flight Attendant's Actual Number of Hours Worked and Applicable Rates of Pay**

   During the statutory period, American has issued its New York based Flight Attendants approximately 480,000 wage statements.  Simone Dep. Tr. at 19:22-25; 20:1-5, Anderson Decl. Ex. C.  Every alternate wage statement, which includes only the "advance pay" capped at either 37.5 or 35 hours, has failed to provide Plaintiff and other New York based Flight Attendants with the actual number of hours worked in that pay period and the applicable rates of pay.  *See*, *e.g.*, AA-Chisolm-Lucas_0000657-658 (Plaintiff's 10/30/2018 pay statement for the pay period 10/1/2018 to 10/15/2018 reflects "C Base Advance" for "37.5 hours" and the amount of $1,246.00) and compare with, AA-Chisolm-Lucas-0000659-660 (Plaintiff's 11/15/2018 pay statement for the pay period 10/26/2018 to 10/31/2018 reflecting R Base Advance in the negative amount of $1,246.50;  R C Regular Pay- Actual Hour for 76.18 hours and the amount of $2,532.22; C B737/A329/MD80 Dom/Intl for 16.50 hours and the amount of $41.25; C A321A330A3530/B767B77B787 for 3.22 hours in the amount of $10.47 and C Training Pay for 11.00 hours and the amount of $275.00), attached as Exhibit H to the Anderson Decl.  Thus, the wage statement for each advance pay period says nothing about hours or rates but merely reflects the advance amount.  American is required by the New York Wage Theft Protection Act, § 195(c) to provide its New York based Flight Attendants with the hours worked and rates of pay in every semi-monthly pay statement.

## II.    ARGUMENT

### A.    American Has Violated Section 191(1)(d) By Failing To Pay Plaintiff and Other Flight Attendants Their Earned Wages in Full Semi-Monthly

#### 1.    Hourly Wages Are Earned When The Work Is Performed

New York Labor Law section 191(1)(d) requires clerical and other workers to be paid their earned wages semi-monthly.  Subsection (1)(d) provides:

> A clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, *but not less frequently than semi-monthly,* on regular pay days designated in advance by the employer.

New York Labor Law ("NYLL") §191(1)(d). [Emphasis added].

American argues that by paying an advance of at least some amount of the "wages earned" in one semi-monthly pay period, and then paying actual wages earned in the other semi-monthly pay period, it is paying the actual "wages earned" in every pay period within the meaning of Section 191.  Def. Br. at 14.  Respectfully, this makes no sense.  The plain meaning of the statutory language is that the legislature intended employees to be paid all their wages earned in each semi-monthly pay period.      Indeed, American's construction of the statute relies upon its truncated excerpt from Section 191.  It concedes that Section 191(a) includes the requirement that manual workers be paid all wages earned within the designated pay period, but ignores that under certain circumstances, those wages could also be paid semi-monthly.  Specifically, the omitted provision states that:

> - ; provided, however, that a manual worker employed by an employer authorized by the commissioner pursuant to subparagraph (ii) . . . shall be paid in accordance with the terms of employment, but not less frequently than semi-monthly.

NYLL § 191(d).  Thus, Section 191(d) is not in "stark contrast" to 191(a); rather, the two subsections are consistent in requiring that where workers may be paid semi-monthly, they must be paid all wages earned in the pay period.

American's arguments would undermine the plain meaning of Section 191. Although American pays its Flight Attendants *some* amount twice per month, it fails to pay them for *all* hours worked at the applicable hourly rate of pay twice per month as required by Section 191. Indeed, American admits that it pays its Flight Attendants their earned wages in full only once per month, at best. *See* Defendant American Airlines, Inc.'s Local Rule 51.6 Statement of Material Facts, ¶¶ 7, 12. In alternating pay periods, American provides its Flight Attendants with an "advance" payment, currently capped at 37.5 hours of pay at the regular rate, regardless of the actual number of hours the Flight Attendant worked in that pay period. *Id*., ¶ 6. This results in an underpayment of earned wages for all Flight Attendants who from July 2018 onward have worked more than 37.5 hours during the first two weeks of the month and who prior to July 2018 worked more than 35 hours in any two-week pay period. During the time he was based in New York during the relevant statutory period from July 2017 to May 2019, and from October 2022 to April 2023, Plaintiff was underpaid approximately $8,593.00 in earned wages for his actual hours worked in alternating pay periods. *See* Breshears Report, Anderson Decl., Ex. G.

Rather than being paid for all hours that he actually worked at the applicable hourly rates semi-monthly, Plaintiff has "to wait to receive [payment for] all of the hours that I've worked" until the 15th of the following month and that "[i]f I'm working 40 hours, I'm only being paid 37-1/2. Well, I have to wait until the 15th of the following month to get the additional two and a half hours." *See* Chisolm-Lucas Dep. Tr. at 81:11-13; 86: 18-22, Anderson Decl., Ex. A. American does not compensate Plaintiff and the other Flight Attendants for the delay in receiving their wages and has not paid Plaintiff and the other Flight Attendants interest. *Id*. at 95: 18-21 (Plaintiff testified that "I'm not being paid interest on anything, when I have to wait another two or three weeks to be properly paid for the hours that I've worked."); *see also* Watkins Dep. Tr., Anderson

Decl., Ex. D, at 72: 20-25; 73: 1-5) ("[W]hen a flight attendant worked more hours during the advance pay period than were actually paid, did American compensate them with any interest . . . . A.  No.").

Plaintiff worked more hours in the two week pay periods than were covered by the 35 or 37.5 hour advance payment while he was based in New York.   *See* Breshears Report, Anderson Decl., Ex. G.  Even though American paid Plaintiff and other New York Flight Attendants some amount twice a month, the advance payment does not satisfy an employer's obligations under NYLL §191.  Indeed, as the New York Department Of Labor has confirmed, "Section 191 of the Labor law requires the timely payment in full for all hours worked at an employee's agreed-upon rate of pay." See https://dol.ny.gov/system/files/documents/2021/03/frequency-of-pay-frequently-asked-questions.pdf.

Contrary to the New York Department of Labor's directive, American argues that Section 191(1)(d) speaks only to the frequency of payment, and not the timely payment in full for all hours worked at the agreed upon hourly rate.  In making this argument, American relies on *Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010).  But American misreads the Second Circuit's decision in *Myers*.

In *Myers*, the plaintiffs were salaried management employees who alleged they were misclassified as exempt and sought to hold Hertz liable for: (1) unpaid overtime under the FLSA and, if overtime wages were owed under federal law, (2) Hertz's failure to make timely payment of the FLSA overtime wages under NYLL §191(d).  *See Id.*  at 543.  The plaintiffs' claims under NYLL §§ 198 and 162 were dismissed by the district court and those two orders were not appealed to the Second Circuit. *Id*. at 544.   Thus, the *Myers* plaintiffs did not assert claims for unpaid

overtime under New York law.  *See Id.*  ("The plaintiffs apparently did not attempt to amend their complaint to add state law claims.").

Although the district court allowed plaintiffs Section 191 claim to proceed on the theory that it could spring from the FLSA overtime claim, the Second Circuit expressed skepticism about whether Section 191(1)(d) created a substantive right to overtime pay and reasoned that it did not: "Section 191 guarantees plaintiffs only timely payment of 'wages earned in accordance with the agreed terms of employment.' . . . Plaintiffs have never alleged that overtime payments were part of the 'agreed terms' of their employment with Hertz." *Id*., at 545, n.1, 546.  The Second Circuit's analysis rejected the use of NYLL §191 to animate a claim entirely dependent on federal law and not grounded in the "agreed terms of employment."  *See Id.*

Here, in contrast, Plaintiff's claims are for his wages earned according to the terms of his employment and New York law, not the FLSA.  The American Airlines Flight Attendant Agreement provides that Plaintiff and the other Flight Attendants are hourly paid employees and provides their hourly rates of pay.  See Anderson Decl., Ex. B at AA CHISOLM-LUCAS_000043. There is no dispute that, as a matter of law, hourly wages are earned when the hours are worked. *See Seidenberg v. Duboff & Davies*, 143 Misc. 167, 169 (N.Y. City Ct. 1932) (under NYLL, wages of non-salaried workers are "earned" when the work is performed, and contractual language stating otherwise is unenforceable).  Indeed, American's designated corporate witnesses, Ms. Simone, testified to this and stated that the "true up" payment is "the difference of what they [Flight Attendants] *actually worked or earned* . . .  minus the advance." Simone Dep. Tr. at 56:4-6, Anderson Decl., Ex. C (emphasis added).  She testified that the true up payment "is the balance of everything that is *owed* from the previous month. . . We look to see how much did they work in that month."  *Id*., at 31: 12-22 (emphasis added).

10

American also relies on *Giugliano v. FS2 Capital Partners, LLC*, 2015 U.S. Dist. Lexis 118679 (E.D.N.Y. Sept. 1, 2015), which held that parties to an employment agreement can decide at what point in time *commissions*, as opposed to the hourly wages at issue here, are considered to be earned. *Giugliano*, and the cases cited therein that address the timing of when a commission, not an hourly wage, is earned, are inapposite. Indeed, it is settled law that when a commission is considered to be earned by the employee is dependent on conditions precedent as defined by the employer, *see Giugliano*, 2015 U.S. Dist. LEXIS 118679 at *36, whereas an hourly wage is earned by the employee when the hour is worked. *See Seidenberg v. Duboff & Davies*, 143 Misc. at 169.

American attempts an end run around Section 191 via the American Airlines Flight Attendant Agreement, or Collective Bargaining Agreement ("CBA"), which American argues permits it to pay its Flight Attendants their earned hourly wages in full only once per month. First, American misreads the statutory language. The provision that "wages earned" be paid "not less frequently than semi-monthly" *qualifies* the preceding language that payment be made "in accordance with the agreed terms of employment." American's reading of the statute would render the "but not less frequently than semi-monthly" language surplusage. Moreover, as a matter of law, contractual terms which violate the New York Labor Law are unenforceable. Since the 1930s, New York courts have held that employers may not contract around the NYLL's statutory requirements concerning timely payment. *See, e.g., Strom v. Prince*, 154 Misc. 888 (N.Y. Mun. Ct. Mar. 29, 1935); *La Juett v. Coty Mach. Co*., 153 Misc. 410 (N.Y. County Ct. Nov. 3, 1934); *Seidenberg v. Duboff & Davies, Inc.*, 143 Misc. 167 (N.Y. City Ct. Mar. 17, 1932). Thus, it is of no moment whether deferred earned hourly wage payments were permissible under the CBA. Courts in New York have held that CBAs cannot override minimum rights granted employees

under the Labor Law.  *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011) ("Although the CBA may provide additional rights to the employees, it may not override independent statutory rights provided by the NYLL.").

### 2. There Is A Private Right of Action to Enforce Section 191(1)

Defendant, relying on *Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 715, 204 N.Y.S.3d 117 (N.Y. App. Div. 2024) ("*Grant*"), argues there is no private right of action to enforce claims under Section 191(1).  But the court in *Grant* plainly recognized that the New York Labor Law § 198 (1-a), provides a private right of action for employees alleging the "nonpayment and partial payment of wages."  *Grant*, 223 A.D.3d at 717-718.  Indeed, this Court has held in its Order dated April 24, 2024, that contrary to the plaintiffs in *Grant*, "here, plaintiff alleges that he suffered 'actual underpayment.'" Thus, as an initial matter, neither *Grant*, nor *Vega v. C&M Assoc. Const. Mgt., LLC,* 175 A.D. 3d 1144, 107 N.Y.S. 3d 286 (First Dept. 2019) ("*Vega*") are dispositive of Plaintiff's claims.

*In Vega*, the court held that a private right of action exists under §§ 191(1)(a) and 198 for a claim alleging a late payment/underpayment of wages, and that the claim arises "[t]he moment that an employer fails to pay wages in compliance with Section 191(1)(a), [as] the employer pays less than what is required," thereby permitting recovery for underpayment under section 198(1-a). *Id.* at 1145.  In reaching this decision, the court found that the term "underpayment" in Section 198(1-a) "encompasses the instances where an employer violates the frequency requirements of [Section 191(1)(a)] but pays all wages due before the commencement of an action." *Id.*; see also, *Georgiou v. Harmon Stores, Inc.*, 2022 U.S. Dist. LEXIS 234643, at **3-4 (E.D.N.Y. Dec. 29, 2022) (following *Vega* and holding, "the deprivation of money to which one is legally entitled is an actual and concrete injury *per se*" and "[m]oney later is not the same as money now." citing

*Stephens v. U.S. Airways Grp., Inc.,* 644 F.3d 437, 442, 396 U.S. App. D.C. 50 (D.C. Cir. 2011) (Kavanaugh, J., concurring).)

Contrary to *Vega*, *Grant* held that "[t]he plain language of [Section] 198(1-a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment[.]" *Id*. at 715 ("We respectfully disagree with the reasoning of *Vega* and decline to follow it..."). *Grant* also based its holding on Section 198's legislative history, which revealed that the statute "was aimed at remedying employers' failure to pay the amount of wages required by contract or law," and contained no reference to "the frequency or timing of wage payments." *Id*. at 718.

Because *Vega* and *Grant* are split on this issue, the New York federal courts are tasked to "predict how the Court of Appeals would resolve the uncertainty or ambiguity from the conflicting appellate decisions." *Gamboa v. Regeneron Pharms., Inc.,* 2024 U.S. Dist. LEXIS 33585, *7-8, 2024 WL 815253 (S.D.N.Y. Feb. 27, 2024) , at *5, citing *Chen v. Dunkin' Brands, Inc*., 954 F.3d 492, 499 (2d Cir. 2020) (internal quotations marks and citation omitted). "With one exception, every court within this Circuit that has confronted the split of appellate authority has remained persuaded by *Vega*." *Levy et al. v. Endeavor Air Inc*., 2024 WL 1422322, at *2 (E.D.N.Y. Mar. 29, 2024)[3]; *see also, e.g., Gamboa, supra,* 2024 WL 815253, at *4; *Zachary v. BG Retail, LLC*, 2024 WL 554174, at *7–9 (S.D.N.Y. Feb. 12, 2024) ("*Zachary*"); *Beh v. Cmty. Care Companions Inc*., 2024 WL 264448, at *5 (W.D.N.Y. Jan. 24, 2024); *Gutierrez v. Carter's Inc*., 2023 WL 7337184, at *3 (E.D.N.Y. Nov. 7, 2023); *Shugars v. Masonite Corp*., 2023 WL 7280902, at *6–7 (N.D.N.Y. Nov. 3, 2023) (collecting cases).

---

[3] The exception is *Galante v. Watermark Servs. IV LLC,* No. 23-cv-6227, 2024 WL 989704, at *7 (W.D.N.Y. Mar. 7, 2024), which followed *Grant* and dismissed plaintiff's §191 claim for failure to be paid on a weekly basis where – unlike here - she had been paid all wages due bi-weekly.

This Court held in its Order dated April 24, 2024, "as defendant admits, most courts considering the issue have held that the New York Court of Appeals will likely overturn *Grant.*"; see also, *Gamboa, supra*, 2024 WL815253, at *5; *Garcia v. Skechers USA Retail, LLC*, 2024 WL 1142316, at *7 (E.D.N.Y. Mar. 15, 2024) ("*Garcia*") ("[T]he New York Court of Appeals is likely to adopt *Vega*'s reasoning."); *Bazinett v. Pregis LLC*, 2024 WL 1116287, at *9 (N.D.N.Y. Mar. 14, 2024) (concluding "the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*."); *Sarmiento v. Flagge Cont. Inc*., 2024 WL 806137 (S.D.N.Y. Feb. 27, 2024) (same).

As to an express private right of action for violations of Section 191, "an employee is underpaid within the meaning of Section 198 each time her employer is required, under Section 191 to pay her for one week of wages and instead pays her nothing on that date." *Zachary, supra,* 2024 WL 554174; *Gamboa*, 2024 WL 815253, at *5; *Garcia*, 2024 WL 1142316, at *6.  While it is true that section 198 does not mention late payment of wages, it authorizes employees to bring "wage claims" for "underpayments" that violate Article 6 of the NYLL, and Article 6 includes the frequency of pay requirements in Section 191.  *Zachary*, at *7; *Gamboa,* at *5; *Garcia*, at *6. The courts following *Vega* also noted that the plain language of Section 191 further supports this conclusion, because it states that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." *See Gamboa*, at *5; *Zachary*, at *8; *Garcia*, at *6, citing to NYLL § 191(2).  "A judge's belief that a manual worker should be able to agree to a different payment schedule, and that such agreement should obviate an employer's liability for failing to comply with the law, does not override an overt legislative judgment to the contrary.  *Zachary*, at *8.

The *Zachary* court also noted, and other courts concurred, that the legislative history supports the private right of action. *Zachary*, at *8. The legislative purpose behind the 2010 amendments to Section 198 was to: (i) allow employees to recover the full amount of any underpayment; (ii) enhance penalties against employers for wage theft; and (iii) benefit low-earning employees who struggle to sustain themselves and their families on a minimum wage, the purpose which *Grant* acknowledged; *see* 223 A.D. 3d at 715; *Zachary*, at *8. A private right of action to enforce Section 191 serves this purpose better than a *potential* enforcement action by the commissioner. *Id.; see also Gamboa*, at *5; *Garcia*, at *6.

*Grant,* moreover, relied on *Konkur v. Utica Academy of Science Charter School*, 185 N.E. 3d 483 (2022), where at issue was a private right of action under an anti-kickback provision of the NYLL, not Section 191(a). *Grant*, at 719. Several courts have rejected *Grant* because of its reliance on *Konkur*. *See Gamboa* at *5; *Zachary* at *8; *Garcia* at *6. Defendant argues that this Court should follow *Grant* because it aligns with this Court's decision in *Georgiou*. But in *Georgiou*, this Court followed *Vega* and held that "*Konkur* does not rise to the level of 'persuasive evidence' that the Court of Appeals would reject *Vega*." *Georgiou*, 2022 US Dist. LEXIS 234643 at *14. This Court further held in *Georgiou* that:

> *Konkur* addressed an implied cause of action for a different and unrelated provision of the NYLL. To the extent *Konkur* discussed § 191's timely payment provisions, it recognized that the private right of action provided for by § 198(1-a) "must relate to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6," and specifically cited §191 as one such substantive provision. *See Konkur*, 38 N.Y.3d at 44, 165 N.Y.S.3d at 6 (citation omitted).

*Id*.

### 3.   Resolving Plaintiff's Section 191 Claim Does Not Require Interpretation of the CBA; Hence, There is No Preemption Under the RLA or LMRA

American argues that resolving Plaintiff's claim for violation of the NYLL § 191 will require this Court to interpret the CBA, and thus, Section 301 preemption applies. Defendant is

wrong. Plaintiff does not dispute what the CBA states. Moreover, the fact that the Court may be required to refer to the CBA's terms for the applicable hourly rates of pay to calculate remedies does not give rise to preemption.

Section 301 preemption standards under the Railway Labor Act ("RLA") and the Labor Management Relations Act ("LMRA") are "virtually identical" in purpose and function and for the most part, are analyzed under a single test and a single, cohesive body of case law. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260, 262–63 & n.9 (1994). "When a state law establishes substantive rights that are independent of a collective bargaining agreement, the enforcement of such rights under state law may not be preempted." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 914 (9th Circuit), citing *Colo. Anti-Discrimination Comm'n v. Cont'l Air Lines, Inc.*, 372 U.S. 714, 724, 83 S. Ct. 1022, (1963); *Terminal R. Asso. v. Brotherhood of R. Trainmen*, 318 U.S. 1, 5-7, 63 S. Ct. 420, (1943). In *Schurke,* the Court of Appeals rejected Alaska's Railway Act preemption argument, holding that a provision in the airline's CBA that provided for less sick days than were provided by state labor law did not preempt the minimum sick day rule under state law. Moreover, "the Supreme Court has distinguished between claims that require interpretation or construction of a labor agreement and those that require a court simply to 'look at' the agreement." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123-26, 114 S. Ct. 2068, 129 (1994)). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livada*s, 512 U.S. at 124.**7**; *see also, Vera v. Saks & Co*., 335 F.3d 109, 114 -115 (2d Cir. 2003) ("[n]ot every suit concerning employment or tangentially involving a CBA . . . is preempted by [§] 301. . .  For example, if a state prescribes rules or establishes rights and

16

obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by § 301.").  Indeed, "[e]ven if resolving a dispute under a state law claim and the [CBA] 'would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.'" *Severin v. Project OHR, Inc.*, No. 10 Civ. 9696 (DLC), 2011 U.S. Dist. LEXIS 99839, 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410, 108 S. Ct. 1877 (1988)).  "Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" *Vera*, 335 F.3d at 115 (quoting *Lingle*, 486 U.S. at 413 n.12).

"The touchstone question for preemption, then, is whether 'resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Berger v. New York Univ.*, 2019 U.S. Dist. LEXIS 129691, 2019 WL 3526533, at *2 (S.D.N.Y. Aug. 2, 2019).  If, as here, "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation" provides no basis for preemption.  *Id.*  (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S. Ct. 2068 (1994)).

American has failed to show that for this Court to determine liability under NYLL § 191, it will be required to analyze and interpret the CBA.  In fact, it will not.  Indeed, neither party here disputes what the CBA states.  Rather, American's failure to pay Plaintiff his earned hourly wages semi-monthly as required by the NYLL is a violation of an independent statutory right.  It is not

necessary to apply or interpret the provisions of a CBA when the action is to enforce employee rights under state law that cannot, in any event, be overridden by inconsistent language in a CBA.

Where, as here, a worker is subjected to a CBA, but claims a violation of an independent statutory right under the NYLL which does not require interpretation and analysis of the CBA to determine liability under the statute, there is no preemption. Indeed, in *Arroyo v. NYU Langone Hosp.,* 2019 U.S. Dist. LEXIS 189531, *5-7 (S.D.N.Y. Oct. 31, 2019), the court held that plaintiff's claim for violations of NYLL, including § 191, were not pre-empted by the existence of a CBA. The court held that with respect to NYLL §§ 190, 191, 198, and 663, "these state law provisions supply a right to compensation that is entirely independent of any contractual rights afforded to Plaintiff in the CBAs." *Id.*, at *8 citing *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011) ("Although the CBA may provide additional rights to the employees, it may not override independent statutory rights provided by the NYLL."). Thus, a plaintiff "may prevail on [his] state[-]law claims regardless of whether the defendants [ ] paid [him] in the manner provided by the CBA," *McLean v. Garage Mgmt. Corp.*, 2011 U.S. Dist. LEXIS 32760, 2011 WL 1143003, at *4 (S.D.N.Y. March 29, 2011), "because N.Y. Labor Law § 663 creates a private cause of action to enforce the rights created under the Labor Law and corresponding regulations, and the existence of, and Defendant's compliance with, the CBAs is 'no defense to such action.'" *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 422-23 (S.D.N.Y. 2013) (quoting NYLL § 663). Indeed, "[c]ourts have routinely held that the sort of unpaid wage [] claims under the NYLL alleged here are 'legally independent' of wage-related provisions in a CBA and are therefore not preempted." *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228-29 (S.D.N.Y. 2016) (citing *Severin*, 2011 U.S. Dist. LEXIS 99839, 2011 WL 3902994, at *4; *Kaye*, 975 F. Supp. 2d at 425-26; *McLean*,

18

2011 U.S. Dist. LEXIS 32760, 2011 WL 1143003, at *3; *Polanco*, 819 F. Supp. 2d at 134); *see also Berger*, 2019 U.S. Dist. LEXIS, at *3 (New York state-law claims for wage and overtime compensation could be adjudicated purely under state law, "irrespective of the terms of [the] employment contract").

In *Berger*, 2019 U.S. Dist. LEXIS 129691, the plaintiff alleged defendant failed to pay him for all hours worked in accordance with the New York Labor Law. Defendant NYU argued that the plaintiff's claims under the NYLL were preempted because "the CBA provides for a complex payment structure, including various pay differentials, overtime credits and daily overtime," such that "analysis of [Berger's] claims will require interpretation and application of these CBA provisions." *Id*., 2019 U.S. Dist. LEXIS 129691, *12. The court disagreed, holding that "this case raises no contention that an employer failed to properly apply the pay rate framework set out in a CBA. . . . Instead, it involves a claim that Berger 'was required to work without any pay at all' for portions of his workday." *Id*., 2019 U.S. Dist. LEXIS 129691, at *12, citing *Isaacs v. Cent. Parking Sys. of N.Y., Inc.*, No. 10 Civ. 5636, 2012 U.S. Dist. LEXIS 38103, 2012 WL 957494, at *4 (E.D.N.Y. Feb. 27, 2012). The court concluded that "[u]nder such circumstances, preemption is not triggered by the mere fact that a court will need to consult the CBA to determine the appropriate rate of pay for any periods as to which liability is found." *Id*., 2019 U.S. Dist. LEXIS 129691, at *13, citing 2012 U.S. Dist. LEXIS 38103, at *5 (distinguishing a preempted claim that a worker is "entitled to a particular type of remuneration" under a CBA from a non-preempted claim that certain premiums a worker was paid under the CBA should factor in to the calculation of the rate of pay the worker is entitled to receive under New York state statutory law for unpaid time).

19

Similarly, in *Diaz v. Amedeo Hotels Ltd. P'ship*, 2016 U.S. Dist. LEXIS 41453, \*19-24 (E.D.N.Y. March 29, 2016), the court held that the workers' claim for violation of NYLL § 196-d for the captains' alleged unlawful sharing in the tip pool was not pre-empted where the CBA permitted the captain's sharing in the tip pool.  In other words, the CBA could not contract around or otherwise violate mandatory New York labor laws.  The court in *Diaz* held "[t]o the extent that this claim simply seeks recovery of tips based solely on the theory that defendants' retention of the tips violated independent rights under the NYLL, this claim is not preempted." *Id.*, at \*24.

Here, American has failed to show that Plaintiff's claim for violation of NYLL § 191 based on American's failure to pay Plaintiff and other New York based Flight Attendants their total earned hourly wages semi-monthly will require analysis and interpretation of the CBA.  Indeed, whether American is required and has failed to pay Plaintiff his earned hourly wages semi-monthly can be determined without analysis and interpretation of the CBA.

## B. Plaintiff Has Suffered Injury and Danger of Future Injury from American's Violation of Section 195(c) Sufficient for Article III Standing

It is well-settled that the constitutional minimum of standing comprises three elements: (1) that the Plaintiff suffered personal injury or threat of injury; (2) that the injury fairly can be traced to the action challenged; and (3) that the injury is likely to be redressed by the requested relief.  *Quieju v. La Jugueria* Inc., 2023 U.S. Dist. LEXIS 72050, at \*\*3-4 (citing *Fund for Animals v. Babbitt,* 89 F.3d 128, 134 (2d Cir. 1996)).  The plaintiff's burden is to show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.  *Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)  (citing cases) (internal quotations omitted).

20

Moreover, the "beneficent purpose of the statutes is relevant." *Veloz v. MM Custom House, Inc*., 2024 U.S. Dist. LEXIS 54202 (E.D.N.Y. March 26, 2024). Section 195(3) was enacted as part of New York's Wage Theft Prevention Act ("WTPA"), to expand the rights of employees to seek civil and criminal remedies for their employers' failure to follow labor law. *Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, 2020 WL 1330744 at *21 (S.D.N.Y. Mar. 20, 2020) (citing N.Y. Spons. Mem., 2010 S.B. 8380). The WTPA addressed studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they were calculated. *Id.* The statute recognizes that employees have a concrete interest in being paid what they are owed, and it seeks to protect that interest by requiring employers to regularly apprise their employees of important information. *Id.* (citing *Hicks v. T.L. Cannon Mgmt. Corp.*, 2018 WL 2440735, at *5 (W.D.N.Y. Mar. 13, 2018)); *see also Veloz,* 2024 U.S. Dist. LEXIS 54202, at *19 ("New York's Wage Theft and Prevention Act, which promulgated NYLL §§ 195(1) and (3), 'was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL.'" *Bueno* v. *Buzinover*, 2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113, at *3 (S.D.N.Y. March 7, 2023) (quoting *Imbarrato*).

American's standing argument fails because it is sufficient that Plaintiff has "acted, or failed to act, to his detriment in reliance on the incomplete information." *See Tavor v. Troia*, 2024 U.S. Dist. LEXIS 17147, *12 (E.D.N.Y. Jan. 31, 2024). Here, Plaintiff has suffered concrete down-stream consequences from the informational injury arising from American's failure to provide Plaintiff and other Flight Attendants timely wage statement information to which they are entitled. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (no "downstream consequences" where (1) "plaintiffs did not allege that they failed to receive any required information" and (2) "[t]hey did

not demonstrate, for example, that the alleged information deficit hindered their ability to correct erroneous information."). Plaintiff has suffered from his inability to make a timely determination whether he had been underpaid due to an error in his pay statement. There have been at least five times where he simply was not paid at all for work performed, including not being paid for ground delay pay and also "missing red flag pay. . . I am not paid for hours that I've worked." *Id*., at 87: 12-17; 129: 23-25; 130: 1-25; 131: 1-3. In several such instances where Plaintiff believed his payroll was incorrectly recorded, he could not confirm the error when he received his "advance" pay statement because it contained no hours or other standard pay statement information. Instead, he had to wait until he received the following "true up" pay statement to determine whether he had been properly paid. See Declaration of Barron Chisolm-Lucas ("Chisolm-Lucas Decl"), at ¶¶ 6-8. Thus, he was delayed by a minimum of two weeks—if not longer—in determining whether he had been properly paid.

Plaintiff is aware of other Flight Attendants who "haven't received their red flag pay. So red flag is basically overtime," and others who were "short" on their paycheck. Chisolm-Lucas Dep. Tr. at 82: 10-12, 20-25, Anderson Decl., Ex A. Plaintiff testified that other New York based Flight Attendants have experienced similar pay discrepancies and errors, "including regular hours that are missing, you know, from a wage statement or paycheck." *Id*., at 97: 23-15. The non-complaint wage statements have caused Plaintiff and other Flight Attendants to engage in extraneous and time-consuming reviews of their flight records in order to determine whether they were properly paid for work performed in the four to six weeks prior to receiving the wage statement compliant with § 195(c). See *Id*., at 82. Providing the statutorily required information of the actual hours worked and the applicable rates of pay on each wage statement twice a month-

and thus much closer in time to the work having been performed and fresh in Plaintiff's mind - would reduce the burden in performing the cross check. See Chisolm-Lucas Decl., ¶ 9.

Payment errors for Flight Attendants at American are a common occurrence. When Plaintiff first commenced work as a Flight Attendant with American, he was advised by a veteran Flight Attendant to always cross check his pay statements with his flight activity records to detect payment errors. Chisolm-Lucas Dep. Tr. at 82, Anderson Decl., Ex. A. Indeed, the American pay system for inflight crew is so complex, *see* American Airlines Flight Attendant Agreement Section 3 – Compensation, at AA-CHISOLM-LUCAS_000043-49, Anderson Decl., Ex. B, and fraught with payment errors that there is a dedicated process for Flight Attendants to submit their payroll dispute claims to the American department division that handles inflight crew pay disputes. See *Id*., at AA-CHISOLM-LUCAS_000048, Anderson Decl., Ex. B. Yet, because the statutorily required information on the number of hours worked and the applicable rates of pay are missing from every alternate wage statement, it is not possible for Plaintiff to determine from the face of the wage statement whether he was properly paid for all hours worked in alternate pay periods. Instead, Plaintiff must wait until he receives the compliant pay statement on the 15th of the following month – or four to six weeks after his work from the first two weeks of the prior month occurred -and cross check his wage statements with his flight records to determine whether he has been paid for all the hours worked at the proper rates of pay for the first two weeks of each prior month. Chisolm-Lucas Dep. Tr. at 82: 2-15; 87:16-25; 88:2-4; 132: 11-24, Anderson Decl., Ex. A; see also, Chisolm-Lucas Decl., ¶¶ 6-10. This delay was longer before July 2018. Chisolm-Lucas Decl., ¶ 7.

Where, as here, there is a real and substantial risk of not being paid for all hours worked due, in part, to the complexity of the American pay system and exacerbated by American's failure

to provide the required hour and wage information on every pay statement, the time and effort spent by Plaintiff in mitigating that risk  - and the additional delay in fixing pay errors caused by the non-compliant wage statements - is a concrete harm sufficient for Article III standing.  *See, e.g., Lubinski v. Johnson Controls, Inc.,*  2024 U.S. Dist. LEXIS 119705, at *3-4 (S.D.N.Y. July 9, 2024) (Article III standing found where "Defendant's failure to provide Plaintiffs with the required wage statements and notices of pay rate and paydays 'harmed them by denying them the information necessary to determine whether they were being paid in accordance with the applicable prevailing wage rates on public job sites, whether they were being paid overtime premium pay at the applicable prevailing wage rates, and whether they were being paid the supplemental benefits they were entitled to.'"); *Martinez v. Finger Mgmt. Corp.* 2024 U.S. Dist. LEXIS 85146, at *4-5 (S.D.N.Y. May 10, 2024) (plaintiff had standing where defendant's "failure to provide accurate wage notices and statements hurt his ability to assess whether he was being properly paid and therefore impaired his ability to promptly raise issues of underpayment."); *Lipstein v. 20X Hosp. LLC*, 2023 U.S. Dist. LEXIS 167615, at *10 (S.D.N.Y. Sept. 19, 2023) (finding that plaintiff had standing because he sufficiently alleged "he was hindered in his ability to contest the wage and hour deficiencies to which he was subjected by him employer"); *Arguello v. Lojan,* 2023 U.S. Dist. LEXIS 120141, at *7 (E.D.N.Y. July 12, 2023), report and recommendation adopted in relevant part, 2023 U.S. Dist. LEXIS 169513  (E.D.N.Y. Sept. 22, 2023) (finding standing because "plaintiff alleges that defendant's failure to provide accurate wage notices and accurate wage statements denied him his statutory right to receive true and accurate information about his employment, and defendant's "breach of these obligations injured [plaintiff] by denying [him] the right to know the conditions of [his] compensation, resulting in the underpayment of wages"); *Bueno*, 2023 U.S. Dist. LEXIS at *2 ("[A]lthough the [second amended

24

complaint] is unspecific as to the downstream injuries that resulted from these alleged statutory violations, such allegations are not necessary to supply standing, and plaintiffs have standing to assert these [NYLL] claims."); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, No. 21-336, 142 S. Ct. 431 (2021) ("[W]hen a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries."); *Reed v. IC Sys.*, 15-CV-279 (KRG), 2017 U.S. Dist. LEXIS 3239, 2017 WL 89047, at \*4 (W.D. Pa. Jan. 10, 2017) ("Plaintiff, as the object of [125] phone calls from Defendant which caused her wasted time and annoyance, has suffered injury in precisely the form the FDCPA was intended to guard against," an injury "sufficiently concrete to confer standing." (citation and modification omitted)); *Stromberg v. Ocwen Loan Serv'g, LLC*, No. 15-CV-04719 (JST), 2017 U.S. Dist. LEXIS 96738, 2017 WL 2686540, at \*1, \*6 (N.D. Cal. June 22, 2017) (recognizing as concrete injuries "expenditures of time and money" to ensure a mortgage is recorded).

Moreover, as the Court reasoned in *Veloz*, where the plaintiffs were not provided with wage statements, "it is well established in this Circuit that '[a]ny monetary loss suffered by the plaintiff satisfies [the injury in fact] element; even a small financial loss suffices.'" *Id.*, at \*19, citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). The *Veloz* court thus held that it "follows that Plaintiffs have Article III standing to bring claims under NYLL §§ 195(1) and (3) based upon the facts alleged because wage notices and wage statements are necessary to empower employees to understand and advocate for their rights, and the deprivation of that information 'can impinge on an employee's interest not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay,'" and denied partial summary judgment. *Id.*

25

## III.    <u>CONCLUSION</u>

For the reasons set forth herein, the Court should deny Defendant's motion for summary judgment in its entirety.

Dated:   July 29, 2024
New York, New York

GISKAN SOLOTAROFF & ANDERSON LLP

/s/ *Catherine E. Anderson*
Catherine E. Anderson
canderson@gslawny.com
Raymond Audain
raudain@gslawny.com
90 Broad Street, 2nd Floor
New York, New York 10004
Tel: (212) 847-8315

Roosevelt N. Nesmith, Esq.
roosevelt@nesmithlaw.com
LAW OFFICE OF
ROOSEVELT N. NESMITH LLC
400 Broadacres Drive, Suite 260
Bloomfield, New Jersey 07003
Tel: (973) 259-6990

David R. Markham, Esq.  (Pro Hac Vice)
dmarkham@markham-law.com
Lisa Brevard, Esq.
lbrevard@markham-law.com
THE MARKHAM LAW FIRM
888 Prospect St., Suite 200
La Jolla, California 92037
Tel: (619) 399-3995

*Counsel for Plaintiff and the Class*