UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRON CHISOLM-LUCAS, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN AIRLINES, INC.,<br><br>            Defendant. | No. 1:23-cv-05177-BMC |

**REPLY BRIEF IN SUPPORT OF DEFENDANT
AMERICAN AIRLINES, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

                                                                               **Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 1

I.     PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF .............................. 1

II.    PLAINTIFF LACKS STANDING TO SEEK DAMAGES ON HIS WAGE STATEMENT CLAIM........................................................................................................ 2

III.   AMERICAN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S LATE PAYMENT CLAIM ................................................................................................. 5

      A.     Section 191(1)(d) Is Not Privately Enforceable....................................................... 5

      B.     Plaintiff's Late Payment Claim Fails On The Merits .............................................. 6

CONCLUSION............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arguello v. Lojan*,
   2023 WL 6594854 (E.D.N.Y. July 12, 2023) .................................................................... 5

*Bueno v. Buzinover*,
   2023 WL 2387113 (S.D.N.Y. Mar. 7, 2023) ...................................................................... 5

*Cavazzini v. MRS Assocs.*,
   574 F. Supp. 3d 134 (E.D.N.Y. 2021) ............................................................................ 4, 5

*Dalton v. Pataki*,
   11 A.D.3d 62 (3d Dep't 2004) ......................................................................................... 9

*Deng v. Frequency Elecs., Inc.*,
   640 F. Supp. 3d 255 (E.D.N.Y. 2022) ............................................................................. 3

*Friedman v. Cavalry Portfolio Servs., LLC*,
   675 F. Supp. 3d 300 (E.D.N.Y. 2023) ......................................................................... 4, 5

*Georgiou v. Harmon Stores, Inc.*,
   2023 WL 112805 (E.D.N.Y. Jan. 5, 2023) ....................................................................... 6

*Giugliano v. FS2 Cap. Partners, LLC*,
   2015 WL 5124796 (E.D.N.Y. 2015) ................................................................................ 9

*Grant v. Glob. Aircraft Dispatch*,
   223 A.D.3d 712 (2d Dep't 2024) ...................................................................................... 6

*Harty v. W. Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ............................................................................................... 2

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) ........................................................................................ 5

*Jajati v. JP Morgan Chase Bank*,
   2024 WL 99659 (E.D.N.Y. Jan. 9, 2024) ....................................................................... 10

*Lipstein v. 20X Hosp. LLC*,
   2023 WL 6124048 (S.D.N.Y. Sept. 19, 2023) ................................................................. 5

*Lubinski v. Johnson Controls, Inc.*,
   2024 U.S. Dist. LEXIS 119705 (S.D.N.Y. July 9, 2024) ................................................. 5

*Martinez v. Finger Mgmt. Corp.*,
   2024 WL 2114330 (S.D.N.Y. May 10, 2024) .................................................................. 5

*Melgar v. Pie Chatach 1776 LLC*,
   2023 WL 2868299 (E.D.N.Y. Apr. 10, 2023) .................................................................. 3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Pachter v. Bernard Hodes Grp.*,
   10 N.Y.3d 609 (2008) ................................................................................................ 9

*Quieju v. La Jugueria Inc.*,
   2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023) ....................................................... 3, 5

*Reed v. IC Sys.*,
   2017 WL 89047 (W.D. Pa. Jan. 10, 2017) ............................................................... 5

*Rivers v. Birnbaum*,
   102 A.D.3d 26 (2d Dep't 2012) ........................................................................ 7, 10

*Rogers v. City of Troy*,
   148 F.3d 52 (2d Cir. 1998) ..................................................................................... 10

*Seidenberg v. Duboff & Davies*,
   143 Misc. 167 (N.Y. City Ct. 1932) .................................................................. 9, 10

*Stromberg v. Ocwen Loan Servicing, LLC*,
   2017 WL 2686540 (N.D. Cal. June 22, 2017) ......................................................... 5

*Tavor v. Troia*,
   2024 WL 360571 (E.D.N.Y. Jan. 31, 2024) ............................................................ 2

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................ 1

*Vega v. CM & Assocs. Constr. Mgmt. LLC*,
   175 A.D.3d 1144 (1st Dep't 2019) .......................................................................... 6

## **STATUTES**

N.Y. Lab. Law § 190(1) ............................................................................................. passim

N.Y. Lab. Law § 195(3) ..................................................................................................... 1

N.Y. Lab. Law § 198(1-a) .................................................................................................. 6

# INTRODUCTION

In his opposition ("Opp."), Plaintiff confirms that none of the relevant facts is disputed; American's motion ("MSJ") raises pure legal defects ripe for summary judgment. To start, Plaintiff lacks standing to seek injunctive relief because any injunction would not apply to him, as his employment is no longer governed by New York law. Plaintiff also lacks standing to seek damages on his wage statement claim because he has not proved that American's allegedly deficient wage statements caused him a concrete injury. He offered no evidence that he would have avoided a cognizable injury, like the lost time value of money, had American provided different wage statements with his advance paychecks. In fact, he confirmed he was able to verify the accuracy of his pay and cannot identify any payroll error during the relevant times.

Plaintiff's late payment claim also fails as a matter of law. Section 191(1)(d) is not privately enforceable. And even if it were, Plaintiff's interpretation of the statute is divorced from the statute's text. Plaintiff's theory is that Section 191(1)(d) requires employers to pay employees for all hours worked in one pay period in the paycheck following the next pay period. Section 191(1)(d) says no such thing, in stark contrast to other provisions in the same Act.

# ARGUMENT

## I. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiff must separately establish standing "for each form of relief" he seeks. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quotations omitted). Here, Plaintiff lacks standing to seek an injunction requiring American to comply with New York Labor Law because his employment is not governed by New York Labor Law. According to Plaintiff, New York Labor Law applies only to workers based in New York. *See* MSJ 11. But he is based in North Carolina. Dkt. 48-3 ("Simone Decl.") ¶ 17; SUF ¶ 16. Thus, an order requiring American to comply with Sections 195(3) and 191(1)(d) will have no effect on him—and would not redress any injury—

because those provisions do not apply to him. Plaintiff says nothing in response. *See* Opp. 20-25.

## II. PLAINTIFF LACKS STANDING TO SEEK DAMAGES ON HIS WAGE STATEMENT CLAIM

Plaintiff also lacks standing to seek damages on his wage statement claim because he has identified only an informational injury, disconnected from any concrete harm. *See* MSJ 8-11. He offers two contrary arguments, both of which suffer from the same basic flaw: Plaintiff has no proof that anything would have been different had American offered the wage statements Plaintiff claims were required.

*First*, Plaintiff claims that his injury was his "delayed" ability to determine whether he was properly paid. Opp. 22. He had to wait until his true-up paycheck to see if there were payroll errors during the period covered by the advance paycheck—although he offered no evidence that a payroll error ever actually even occurred during such a period. *Id.*[1] But even if one had occurred during such a period and when he was based in New York, delay in receiving information alone is not a "downstream consequence" of Plaintiff's informational injury. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022). It is part and parcel of the informational injury. *See Tavor v. Troia*, 2024 WL 360571, at *4 (E.D.N.Y. Jan. 31, 2024) (injury that "is not sufficiently different" from non-Article III injury cannot create standing).

The nature of Plaintiff's injury is that he was not provided the information Section 195(3) required at the time required. And that is true for every claim under Section 195(3). Either the Plaintiff will not receive the required information at all or he will receive it late. If not receiving

---

[1] Plaintiff suggests that, of the five alleged payroll errors, there were "several … instances" that occurred in the period covered by his advance paycheck, Opp. 22, but he offers no factual support. In fact, the paragraphs in his declaration that he cites do not identify any payroll errors at all. *See* Dkt. 51 ("Chisolm-Lucas Decl.") ¶¶ 6-8. Moreover, Plaintiff confirms that he does not even know if any of the alleged payroll errors occurred when he was based in New York. Dkt. 50 ("Counter SUF") ¶ 23. Thus, even assuming for the sake of argument that Plaintiff suffered more than an informational injury, there is no evidence he did so when New York law applied.

the required information at all—which will deprive a worker of any ability to check for payroll errors (absent an independent source of pay information)—is not sufficient to establish standing, *see Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *1-2 (E.D.N.Y. Apr. 25, 2023); *Melgar v. Pie Chatach 1776 LLC*, 2023 WL 2868299, at *1-2 (E.D.N.Y. Apr. 10, 2023); *Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 265-67 (E.D.N.Y. 2022), then *a fortiori* it is not sufficient merely to claim to have received information late. What Plaintiff is lacking is any showing that his delayed ability to ascertain alleged payroll errors had any effect on the pay he received.

In its motion, American identified one such possible effect. If Plaintiff could show that his delayed ability to catch payroll errors caused those errors to be corrected later than they otherwise would have been, Plaintiff may have suffered a concrete injury in the form of lost time value of money. *See* MSJ 8-9. But Plaintiff does not argue this theory. And he has not established any of its factual predicates. In fact, despite American specifically flagging the issue, he offered *no* evidence showing that there was a payroll error during the advance pay period that he would have had corrected sooner if only American had provided compliant wage statements for those periods.

*Second*, Plaintiff advances a "wasted" effort theory of standing based on the effort he expended cross-checking his wage statements against his flight activity records in search of payroll errors. Opp. 23-25. (A flight activity record is a document American provides flight attendants showing the hours the flight attendant has worked, *see* Simone Decl. ¶ 21; Dkt. 48.11.) Plaintiff admits he would have performed these cross-checks whether American issued compliant wage statements once a month or twice a month. *See* Chisolm-Lucas Decl. ¶ 9. He also admits he received all information with the "'true up' pay statement to determine whether he had been properly paid." Opp. 22. Thus, Plaintiff does not claim he was unable to verify the accuracy of his pay or that he performed cross-checks because American issued allegedly non-compliant wage

3

statements—he would have done that anyway. Rather, his theory is that the allegedly non-compliant wage statements made the cross-check more "burdensome." Chisolm-Lucas Decl. ¶ 9. According to him, "[p]roviding the statutorily required information … on each wage statement twice a month and thus much closer in time to the work having been performed and fresh in Plaintiff's mind would reduce the burden in performing the cross check." Opp. 22-23.

That theory fails factually and legally. Factually, Plaintiff has not proved an increased burden. In his declaration, Plaintiff explains that his cross-check consisted of comparing his wage statements to his flight activity reports. Chisolm-Lucas Decl. ¶ 9. Comparing two pieces of paper does not become more burdensome just because one of the pieces of paper was issued two weeks later than it allegedly should have been.[2]

Legally, wasted effort does not create standing. *See Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 143 (E.D.N.Y. 2021) (collecting cases); *see also, e.g.*, *Friedman v. Cavalry Portfolio Servs., LLC*, 675 F. Supp. 3d 300, 304 (E.D.N.Y. 2023) (Cogan, J.). It follows that Plaintiff's (erroneous) claim that American's non-compliance caused him to waste marginally more effort cannot ground standing. If wasted effort is insufficient as a matter of law, then it does not matter how much effort Plaintiff wasted.

Instead, Plaintiff needed to prove that the effort he allegedly wasted was "inextricably bound up in a cognizable injury." *Cavazzini*, 574 F. Supp. 3d at 143; *see also Friedman*, 675 F. Supp. 3d at 304. Here, the only conceivable concrete injury Plaintiff could have suffered from

---

[2] Flight activity records for the prior months' work are usually issued on the ninth of the following month. Simone Decl. ¶ 21. Thus, if American had provided a wage statement with the allegedly missing information along with the advance paycheck, Plaintiff still would not have been able to perform his cross-check until the ninth of the next month. As a consequence, Plaintiff was theoretically delayed by approximately six days in his ability to perform the cross-check (he could not start until he received his complete wage statement on the 15th). There is no basis to conclude that starting the cross-check six days sooner would have made it any easier—no information lost its "freshness" in that brief window.

4

receiving the required information a couple weeks late is the lost time value of money from his hypothetical inability to correct payroll errors sooner. If Plaintiff had evidence showing that he expended additional effort to catch and correct payroll errors sooner, then he could potentially establish standing. *See Cavazzini*, 574 F. Supp. 3d at 143; *Friedman*, 675 F. Supp. 3d at 304. But Plaintiff has not even attempted to make this showing. *Supra* at 2.

None of Plaintiff's cases supports a contrary conclusion. Some hold that lost time value of money is a concrete injury—a plaintiff has standing if he could not promptly correct payment errors.[3] But Plaintiff put forth no evidence to that effect. He has no evidence that "he *would have* avoided" an underpayment (at all, or sooner) had American issued compliant wage statements, *Quieju*, 2023 WL 3073518, at *2, as is required at summary judgment. Other cases involve different statutory schemes and generally hold that effort spent to avoid or rectify an Article III injury is sufficient.[4] But those cases do not help Plaintiff for the reasons above. He did not prove that the wage statements accompanying his advance paycheck caused him to expend more energy or that any energy attributable to those wage statements helped him avoid concrete injury.

### III.  AMERICAN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S LATE PAYMENT CLAIM

#### A.   Section 191(1)(d) Is Not Privately Enforceable

New York's intermediate appellate courts are divided on whether Section 191(1)(d) is

---

[3] *Martinez v. Finger Mgmt. Corp.*, 2024 WL 2114330, at *2 (S.D.N.Y. May 10, 2024); *Lipstein v. 20X Hosp. LLC*, 2023 WL 6124048, at *9-11 (S.D.N.Y. Sept. 19, 2023); *Arguello v. Lojan*, 2023 WL 6594854, at *7 (E.D.N.Y. July 12, 2023). To the extent those cases suggest that inability to raise *hypothetical* underpayment issues—i.e., payment errors that may not have actually occurred—itself is an injury in fact, *e.g.*, *Lubinski v. Johnson Controls, Inc.*, 2024 U.S. Dist. LEXIS 119705, at *3-4 (S.D.N.Y. July 9, 2024); *Bueno v. Buzinover*, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023), they conflict with this Court's decisions in *Quieju*, *Melgar*, and *Deng*.

[4] *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261-63 (11th Cir. 2021); *Stromberg v. Ocwen Loan Servicing, LLC*, 2017 WL 2686540, at *4-7 (N.D. Cal. June 22, 2017); *cf. Reed v. IC Sys.*, 2017 WL 89047, at *1-3 (W.D. Pa. Jan. 10, 2017) (wasted time and annoyance sufficient injury under FDCPA).

5

privately enforceable.  *Compare Grant v. Glob. Aircraft Dispatch*, 223 A.D.3d 712 (2d Dep't 2024), *with Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dep't 2019).  In these circumstances, this Court's task is to predict how the New York Court of Appeals will rule. In *Georgiou v. Harmon Stores, Inc.*, 2023 WL 112805 (E.D.N.Y. Jan. 5, 2023), this Court expressed "doubts about the viability" of *Vega* but followed *Vega* "pending further instruction from the New York State courts." *Id*. at *6.  *Grant* provides that guidance.

Plaintiff asserts that he would have a claim under *Grant* because his expert purportedly calculated an "underpayment."  *See* Opp. 8, 12.  That "underpayment" is not the lost time value of money; *Grant* rejected that theory.  *See* 223 A.D.3d at 716.  Rather, Plaintiff says that the "underpayment" is the very fact that he was paid late—i.e., the amount he *temporarily* did not receive in his advance paychecks (plus interest).  *Grant* rejected that theory too.  Every late payment case, including *Grant*, involves the same alleged injury: being paid late means the worker is temporarily "underpaid" (to use Plaintiff's phrase).  *Grant* squarely holds late payment is not underpayment within the meaning of Section 198(1-a).  *Id*. at 715-20.  *Grant* disposes of Plaintiff's late payment claim.  This Court should follow it.

### B. Plaintiff's Late Payment Claim Fails On The Merits

American complied with each requirement in Section 191(1)(d).  *See* MSJ 13-14.  It paid Plaintiff the wages he earned in accordance with the CBA.  It paid him those wages semi-monthly. And it did so on regular paydays, designated in advance.  None of those facts is disputed.  Counter SUF ¶¶ 2-4, 18-19.  Instead, Plaintiff presses a novel interpretation of Section 191(1)(d) that would require this Court to significantly—and impermissibly—rewrite the statute.

1. Section 191(1)(d) provides that clerical and other workers must be "paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular paydays designated in advance by the employer." N.Y. Lab. Law § 191(1)(d).

6

Plaintiff asserts that "[t]he plain meaning of the statutory language is that the legislature intended employees to be paid all their wages earned *in each semi-monthly pay period*." Opp. 7 (emphasis added). But the statute says nothing about pay periods. As American has already explained, *see* MSJ 14-16, the statute does not say employers must pay workers all the wages they earned in one pay period at the end of the following pay period (which is Plaintiff's theory) or anything like that.

The Legislature clearly knew how to impose such a requirement if it wanted to because it imposed similar requirements for manual workers, railroad workers, and commission salespersons in Sections 191(1)(a)-(c). Each provision requires an employer to pay workers an amount of wages reflecting the worker's earnings within a specified time after those wages are earned. *See* MSJ 15. The decision to omit a comparable requirement for clerical workers in Section 191(1)(d) speaks volumes. *See Rivers v. Birnbaum*, 102 A.D.3d 26, 36 (2d Dep't 2012).

Plaintiff offers almost nothing in support of his contrary interpretation. He does not parse the statute's text or explain where his supposed "pay period" requirement comes from. Nor does he cite case law. His only attempt at statutory interpretation is a transitive argument that falls apart upon cursory inspection. The argument goes like this: Section 191(1)(a) (in part) requires manual workers be paid wages earned within a designated period; Section 191(1)(d) has similar language; thus, Plaintiff posits, workers covered by Section 191(1)(d) "must be paid all wages earned in the pay period." Opp. 7.

The glaring flaw in Plaintiff's argument is that he ignores that Section 191(1)(a) creates two separate payment regimes—one of which looks like Section 191(1)(d) and one of which does not. Section 191(1)(a)'s main rule requires employers to pay manual workers "not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a). That creates a pay period requirement, but there is *no* comparable language in Section 191(1)(d).

7

By contrast, Section 191(1)(a)'s alternate rule authorizes the commissioner in certain circumstances to allow employers to pay manual workers "in accordance with the agreed terms of employment, but not less frequently than semi-monthly." *Id*. This alternate rule looks like Section 191(1)(d), but it does *not* create a pay period requirement. Thus, read in full, Section 191(1)(a) illustrates the difference between a pay period requirement (the main rule) and the absence of one (the alternate rule in Section 191(1)(a) and the rule in Section 191(1)(d)).

Plaintiff's only other argument is that American's position is contrary to an FAQ on the Department of Labor's website. Setting aside the obvious point that this document cannot control over statutory text, there is no inconsistency. Nothing in it suggests that Section 191(1)(d) requires employers to pay employees wages reflecting work performed in a pay period at the end of the following period (as Plaintiff contends). Plaintiff cites language stating that "Section 191 of the Labor law requires the timely payment in full for all hours worked at an employee's agreed-upon rate of pay." Opp. 9. But that is what American did. It paid Plaintiff his full months' wages over the course of two paychecks per month—i.e., "semi-monthly," N.Y. Lab. Law § 191(1)(d)—in compliance with Section 191(1)(d). Section 191(1)(d) did not require American to pay for work performed in a particular period in any particular paycheck.

2. Even if Section 191(1)(d) required American to pay Plaintiff the wages he earned in one pay period at the end of the next pay period, Plaintiff's claim would still fail. That is because the statute allows parties to determine when wages are earned by contract, and under the CBA here, Plaintiff earned his wages at the end of the month and received his full months' wages by the end of the next pay period. *See* MSJ 17-18.

Plaintiff's response is "that, as a matter of law, hourly wages are earned when the hours are worked," and thus the agreement providing that Plaintiff's wages are earned at the end of the

8

month is invalid. Opp. 10-11. The statute is to the contrary. While the word "earned," without more, might mean that wages are earned when work is performed, *see Seidenberg v. Duboff & Davies*, 143 Misc. 167, 169 (N.Y. City Ct. 1932), Section 191(1)(d) says more: it applies to "wages earned in accordance with the agreed terms of employment," N.Y. Lab. Law § 191(1)(d). And "[i]t is beyond dispute that the phrase 'in accordance with the agreed terms of employment' means that the parties to an employment agreement may define for themselves the circumstances under which wages are 'earned.'" *Giugliano v. FS2 Cap. Partners, LLC*, 2015 WL 5124796, at *15 (E.D.N.Y. 2015). Plaintiff's theory requires deleting that phrase from the statute.

Plaintiff nonetheless insists that *Giugliano*'s rule is inapplicable because that case, and those it cited, concerned commissions, not hourly wages. Opp. 11. To the extent that is a distinction, it makes no difference. For one thing, under Section 190(1), a commission *is* a wage, so *Giugliano*'s rule necessarily means that contract parties can determine when wages are earned. For another, *Giugliano* explained that *identical language* in Section 191(1)(c) applying to commissioned salespeople allowed parties to determine by contract when commissions are earned. Plaintiff provides no sound reason why the same language set out in the same grammatical structure in consecutive sections of the same statute would take on different meanings. *See, e.g.*, *Dalton v. Pataki*, 11 A.D.3d 62, 74 (3d Dep't 2004).

Plaintiff's point seems to be that "hourly wages" are different than other types of wages like commissions. Plaintiff cites no statutory basis for this assertion. Rather, he contends that commissions are "dependent on conditions precedent defined by the employer, whereas an hourly wage is earned by the employee when the hour is worked." Opp. 11 (citation omitted). It is not clear why it would matter that commissions are dependent on conditions precedent set by the employer or whether that is even correct. *See Pachter v. Bernard Hodes Grp.*, 10 N.Y.3d 609, 617

9

(2008) (common-law rule is that commissions are earned when broker produces a willing buyer). More important, there is no rule forbidding the Legislature from allowing parties to contract around a default rule that wages are earned when work is performed, which is exactly what it did when it used the phrase "in accordance with the agreed terms of employment." If the Legislature wanted the word "earned" to take on its ordinary meaning, it would have used *only* the phrase "wages earned" (or similar), as it did in Sections 191(1)(a) and (b) and also in the statute at issue in *Seidenberg*, 143 Misc. at 168, the 1932 trial court decision on which Plaintiff exclusively relies. But the Legislature drafted Section 191(1)(d) differently. *See Rivers*, 102 A.D.3d at 36. As drafted, Section 191(1)(d) allows the parties to an employment agreement—here, American and the union representing American flight attendants—to determine for themselves when wages are earned.[5]

Plaintiff does not appear to dispute that, under the CBA, flight attendants earn their wages at the end of the month, MSJ 19-20, thus waiving the argument, *see, e.g.*, *Jajati v. JP Morgan Chase Bank*, 2024 WL 99659, at *2 (E.D.N.Y. Jan. 9, 2024). If Plaintiff did dispute when wages are earned, this Court would lack jurisdiction. *See* MSJ 18-20. Under the RLA, system boards have exclusive jurisdiction to resolve disputes over the meaning of an air carrier CBA. *Id.*[6]

## CONCLUSION

For these reasons, the Court should grant American's motion for summary judgment.

---

[5] Contrary to Plaintiff's argument (Opp. 11), American's position would not render "not less frequently than semi-monthly" surplusage. No matter when the contract says wages are earned, the employer would still need to pay the employee twice a month. And other statutes, like minimum wage laws, would control both the amount of those paychecks and possibly how frequently after work is performed the employee must be paid. *See Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (FLSA requires "prompt payment").

[6] Plaintiff's argument on RLA preemption is non-responsive. To the extent his position is that there is no minor dispute because no one disagrees about "what the CBA states," Opp. 17, he ignores that the CBA also incorporates practice, usage, and custom, MSJ 19. But there is no reason for the Court to reach this issue. Section 191(1)(d) is not privately enforceable. And even if it is, Plaintiff's "pay period" argument finds no footing in the statute's text. Only if the Court rejects both those arguments does it need to address RLA preemption.

10

Dated:  August 8, 2024                               Respectfully submitted,

By: /s/   *Mark W. Robertson*
Mark W. Robertson
Charles J. Mahoney
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061
Email: mrobertson@omm.com
         cmahoney@omm.com

Jason Zarrow (*pro hac vice*)
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-8367
Facsimile: (213) 430-6407
Email: jzarrow@omm.com

Kristin MacDonnell (*pro hac vice*)
O'Melveny & Myers LLP
Two Embarcadero Center
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
Email: kmacdonnell@omm.com

*Attorneys for American Airlines, Inc.*

11